**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANY MERCADO, as Legal Guardian of, S.S.M., a minor,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| v. | : | |
| | : | **NO. 25-5925** |
| **ROBLOX CORPORATION, EPIC GAMES, INC., MICROSOFT CORPORATION, and MOJANG AB,** | : | |
| Defendants. | : | |

**Perez, J.** **September 25, 2026**

## MEMORANDUM

The right to a jury in a civil trial is enshrined in the Seventh Amendment to the United States Constitution. Nonetheless, individuals may, and often do, contract away that right when they receive services or products from large companies. Federal law favors such agreements and requires courts to place them on equal footing with other contracts. That "equal footing" cuts both ways. It mandates enforcement where a valid agreement is formed but allows for avoidance when generally applicable contract defenses apply. In Pennsylvania, like many states, minors are not competent to contract under the law, but they may still enter and be bound by a contract, whether they understand or not. Due to their infancy, however, minors have available one important, generally applicable contract defense: the law allows them to change their mind, disaffirm the contract, and avoid its enforcement. That is what happened here.

This case arises from minor S.S.M.'s use of and resulting addiction to video games created by Defendants Epic Games, Inc. ("Epic"), Roblox Corporation ("Roblox"), and Mojang AB ("Mojang"), all of which may be played on Defendant Microsoft Corporation's ("Microsoft") Xbox gaming system. Players cannot play these games without first creating accounts and accepting

Defendants' user agreements. Those user agreements all contain arbitration provisions. Before the Court is Roblox's motion to compel arbitration, based on Roblox's Terms of Use ("RTOU") which is presented to players upon account creation, when the terms are updated, and when users purchase Robux. Roblox supports its motion with a declaration from a senior paralegal in Roblox's Litigation and Legal Operations. Plaintiff has filed sixteen objections to the declaration and supporting exhibits. As discussed below, the Court overrules most of Plaintiff's objections.

Even so, the Court denies Roblox's motion. Although Roblox provided adequate notice of the RTOU, and S.S.M. agreed to its terms on multiple occasions, minors have the right to disaffirm contracts. S.S.M. disaffirmed the RTOU, and Roblox presented no evidence to show the disaffirmance was ineffective. Accordingly, S.S.M. cannot be compelled to arbitrate their claims.

## I. Background

Plaintiff S.S.M. began playing video games, including Roblox, at approximately six years old. ECF No. 1 ¶¶ 13, 282. Now a teenager, S.S.M. alleges they are addicted to video games because of their use of Defendants' games, including Roblox, Minecraft, and Fortnite. *Id.* ¶ 280. This addiction has caused S.S.M. to spend most of their time outside of school playing video games and has caused a decline in S.S.M.'s academic performance and diminishing social interactions. *Id.* ¶¶ 290–92. S.S.M. suffers from severe withdrawal symptoms if anyone attempts to remove them from video games. *Id.* ¶ 294.

On October 15, 2025, S.S.M. brought this lawsuit, raising claims of strict product liability, negligence, and fraud against each Defendant. ECF No. 1. On December 3, 2025, the parties entered a stipulation setting a deadline for all Defendants to file motions to compel arbitration by February 27, 2026. ECF No. 32. The Court approved the stipulation on the same day. ECF No. 34. Roblox timely moved to compel S.S.M. to arbitrate their claims against it. ECF No. 50. Plaintiff

filed an opposition with supporting evidence. ECF Nos. 69, 71. Roblox filed a reply. ECF No. 75. The motion is fully briefed and ripe for review.

### A. Roblox Account Creation and Use

Roblox developed, markets, and sells an online video game platform (the "Roblox Platform"). ECF No. 1 ¶ 14. Roblox allows users to create virtual games, connect with others, and acquire or use virtual apparel and other content that they and other users create. Jit Decl. ¶ 4, ECF No. 50-2. To use the Roblox Platform, users must create an account and agree to the Roblox Terms of Use (RTOU). *Id.* ¶ 10; *see also* ECF No. 1 ¶ 97. The RTOU contains an arbitration provision that requires the parties to submit all disputes to arbitration, "including without limitation whether or not any part of these Terms is void or voidable." Ex. 6 to Jit Decl., ECF No. 50-8 at 17. The RTOU allows users to opt-out of the arbitration provision by sending written notice to Roblox within 30 days of signing up for the first time. *Id.* at 18; *see also* RTOU updates from 2023 and 2024, ECF Nos. 50-6 at 26, 50-7 at 27.

Roblox periodically updates the RTOU. *Id.* ¶ 10. When it does, it notifies users via a pop-up notice displayed on the screen when users access the Roblox Platform. *Id.* The pop-up notice includes a bolded hyperlink to the updated RTOU and directs minors to show their parent or guardian. *Id.* ¶¶ 10, 13–14. Users must click "I agree" on the pop-up notice to accept the new terms. *Id.* ¶ 14. If users do not click "I accept," they cannot continue to play Roblox. *See id.* Pop-up notices were issued in August 2023, February 2024, June 2024, November 2024, and June 2025. *Id.* ¶ 14. The pop-up notice issued in June 2025 is shown in the screenshot below:




*Id.* Roblox additionally notifies users of updates via a notification on their personal "Messages" page ("Update Message"). *See id.* ¶ 12. One such Update Message was issued 30 days before an August 2023 update took effect. *Id.* ¶¶ 11, 13. It also provided a hyperlink to the new terms and stated:

> Beginning on August 1, 2023, you – or if you are a minor, your parent/guardian – will need to agree to the updated Terms of Use in order to continue using Roblox. Please take some time to review these important legal documents, and if you are a minor, share them with your parent/guardian. If you do not agree, you can close your Roblox account(s) before these updates go into effect.

*Id.* ¶ 13.

**B. Robux Purchases and Gift Card Redemption**

When logged into their Roblox account, players may also purchase Robux—currency used for in-game purchases. *See id.* ¶ 5. Players can obtain Robux either directly through the Buy Robux page or by redeeming Robux gift cards. ECF No. 50-2 ¶¶ 18, 27. In either case, Robux purchases are linked to the user's Roblox account. *See* Exs. 1 & 2 to Jit Decl., ECF Nos. 50-3 & 50-4. The Buy Robux page contains a disclosure that by buying Robux, the user "agree[s] to the Terms of Use, which includes an agreement to arbitrate any dispute between [the user] and Roblox." *Id.* ¶ 18. After selecting the desired package, users on a web browser are taken to a page to input their payment information, where they are again provided with a notice that "[b]y submitting payment

information you acknowledge that you are at least 18 years old, and that you agree to [the RTOU], including the arbitration clause . . . ." *Id.* ¶ 21. The "Roblox Terms" are written in blue text and link to the then-current version of the RTOU. *Id.* A similar disclosure is shown to users purchasing Robux on a mobile device. *Id.* ¶ 22.

Likewise, when redeeming a Robux gift card, users must navigate to the redemption webpage, enter the gift card redemption code, and click "Redeem." *Id.* ¶¶ 28–29. Directly above the "Redeem" button is a statement that redeeming the code constitutes agreement to the RTOU, including the arbitration clause, which is also hyperlinked. *Id.* ¶¶ 29–30.

**C. S.S.M.'s Roblox Accounts**

S.S.M. played Roblox and could not have done so without a Roblox account. ECF No. 1 ¶¶ 9, 13, 97. Plaintiff's counsel provided Roblox's counsel with account information related to S.S.M.'s use of Roblox. Boelts Decl., ECF No. 71-3. Based on that information, Roblox identified one Roblox account belonging to S.S.M., created on September 28, 2022 (the "Roblox Account"). ECF No. 50-2 ¶ 6. The Roblox Account remains open and was most recently used on February 24, 2026. *Id.* ¶ 8. Additionally, the Roblox Account made twenty-two purchases of Robux between October 7, 2023, and October 29, 2025. *Id.* ¶ 24. It additionally redeemed Robux gift cards on five occasions between November 26, 2022 and July 7, 2023. *Id.* ¶ 32.

Mercado has never played Roblox or created a Roblox account. Mercado Decl., ECF No. 71-2 ¶¶ 5–6. She has never purchased Robux, redeemed a Robux gift card, or authorized the use of her credit card to make purchases related to Roblox. *Id.* ¶¶ 7–8, 25. Mercado has never seen the RTOU. *Id.* ¶ 12. S.S.M. does not deny creating the Roblox account or purchasing Robux. S.S.M. Decl., ECF No. 71-1. S.S.M. states that the game saves their username and password and rarely asks for it to be entered before playing. *Id.* ¶ 5. S.S.M. is aware of other people using the same Roblox account they use to play Roblox but does not mention anyone else using account to

purchase Robux or redeem Robux gift cards. *Id.* ¶ 6. S.S.M. does not recall seeing the RTOU or any messages from Roblox about arbitration. *Id.* ¶ 8. On June 3, 2026, S.S.M. executed a declaration stating that they disaffirm the RTOU, including the arbitration and delegation provisions. *Id.* ¶ 22.

## II. Plaintiff's Objections

Plaintiff raises sixteen objections to the declaration of Ronita Jit and the exhibits thereto based on relevance, hearsay, improper opinion, authentication, personal knowledge, and the best evidence rule. ECF No. 68-7; *see* Fed. R. Evid. 402, 802, 701, 901, 602, 1002, 1004. Ronita Jit is a Senior Paralegal, Litigation and Legal Operations at Roblox. ECF No. 50-2 ¶ 1. Jit has assisted with litigation at Roblox since January 31, 2023. *Id.* Through that work, Jit is familiar with the systems and records that relate to Roblox account holders' records and account sign-in and sign-up flows, Robux purchases, and Robux gift card redemptions. *Id.* Jit submitted a declaration based on her personal knowledge and review of records maintained in the ordinary course of Roblox's business. *Id.*

### A. Personal Knowledge

Plaintiff begins with an objection for lack of foundation under Federal Rule of Evidence 602. Plaintiff contends that "reciting one's position or job title is insufficient to demonstrate competence to testify," that simply stating one is "familiar" with Roblox's systems and records does not establish how Jit obtained the information and cannot lay the proper foundation for personal knowledge, and that she does not claim to be attesting in the capacity of a custodian of records such that the business records exception to hearsay would negate the need for personal knowledge.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Such evidence

may consist of the witness's own testimony. *Id.* "When a lay witness has particularized knowledge by virtue of her experience, she may testify—even if the subject matter is specialized or technical—because the testimony is based on the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009). "When testifying about his business, a lay witness's personal knowledge may include 'inferences that he could draw from his perception of a business's records, or facts or data perceived by him in his corporate capacity.'" *United States v. Eady*, 648 F. App'x 188, 190 (3d Cir. 2016) (quoting *United States v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003)) (allowing testimony from party's employee with no prior experience with web service because "his knowledge was . . . based on business records and information that he acquired from his professional colleagues"); *see also Klosterman v. Discover Prods. Inc.*, 752 F. Supp. 3d 470, 477–78 (E.D. Pa. 2024) (declining to exclude declaration based on review of records); *Crumpler v. Midland Credit Mgmt., Inc.*, No. 13-1953, 2013 WL 6576318, at *2 (E.D. Pa. Dec. 13, 2013) (same).

Jit has established that she gained the necessary knowledge, through her own experience and through her review of business records, to competently testify to the Roblox sign-up and sign-in processes, the Robux purchases and Robux gift card redemptions, and to the records documenting users' Roblox accounts and Robux purchases. *See* ECF No. 50-2 ¶ 1. Plaintiff's objections under Fed. R. Evid. 602 are overruled.

**B. Authentication**

Plaintiff also argues the exhibits are not properly authenticated, nor are the business records Jit reviewed to gain personal knowledge. Rule 901 allows a party to satisfy the requirement of authenticating evidence through testimony of a witness with knowledge that the item is what it claims to be. Fed. R. Evid. 901(a), (b)(1). The proponent has an "incredibly 'slight' burden. *Blunt*

*v. Lower Merion Sch. Dist.*, 767 F.3d 247, 330 (3d Cir. 2014) (McKee, J., concurring in part) (quoting Fed. R. Evid. 901(a)). Jit attested that the records she reviewed are maintained in the ordinary course of business and that each screenshot and attached exhibit is "true and accurate." This is sufficient to support a finding that the items are what Jit claims they are. Jit need not authenticate (or produce) the business records she reviewed to gain the requisite knowledge to testify. Plaintiff's objections under Fed. R. Evid. 901 are overruled.

### C. Best Evidence

The Best Evidence Rule requires a party to produce the "original writing, recording or photograph . . . to prove its content." Fed. R. Evid. 1002. The Rule only applies when the proponent seeks to prove the contents of the document. *Id.* It does not bar testimony about an event or process simply because there is also a written record of the event. Fed. R. Evid. 1002 advisory committee's notes. Nor does it require the production of documents containing information about which the declarant has personal knowledge. *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994); *see also Johns v. Nelnet*, No. 22-4791, 2026 WL 914621, at *5 n.6 (E.D. Pa. Mar. 31, 2026) (Rule 1002 "does not prohibit a witness from testifying as to their personal knowledge simply because that testimony can also be supported by written documentation."). The Rule also does not prohibit the declarant from quoting documents that have been produced or explaining their contents. *See Giuliano v. Anchorage Advisors, LLC*, 19 F. Supp. 3d 1087, 1100 (D. Or. 2014) ("Where, as in every instance here, the subject document is in fact offered into evidence, the rule does not preclude testimony regarding its contents, whether or not such testimony would be superfluous.").

Plaintiff first argues the entire declaration violates the Best Evidence Rule to the extent Jit's statements are based on unproduced business records. Plaintiff is incorrect. Jit's reliance on Roblox's records to develop personal knowledge does not implicate the Best Evidence Rule

because Jit's declaration generally does not seek to prove the contents of the documents she reviewed. The same is true for the following Best Evidence Objections:

- Objection Number 3 to paragraph 10 ("In order to use the Roblox [P]latform, users must create an account and agree to Roblox's Terms of Use.");
- Objection Number 6 to paragraph 14 (describing pop-up and email notices of updates and embedding screenshot showing June 2025 pop-up notice);
- Objection Number 7 to paragraph 15 ("Following these notices, the Account continued to be accessed and actively used, including conducting on-platform purchases of Robux. The Account remains open as of the date of this submission and was most recently used on February 24, 2026.");
- Objection Number 9 to paragraph 18 (describing Robux purchase procedure between August 2022 to the present, including disclosure shown on web-version of Buy Robux page);
- Objection Number 13 to paragraphs 25 and 26 (providing example of specific Robux purchase and embedding screenshot of disclosure as it appeared on the date of purchase); and
- Objection Number 16 to paragraph 34 ("While there is some variation over time and platform, the Roblox Gift Card redemption process depicted above is representative of the Roblox Gift Card redemptions made on the Account.").

Each of these statements either attaches a true and accurate screenshot of the described screen shown to consumers or is made from Jit's personal knowledge. The statements further describe the processes for notifying account holders of RTOU updates and the process for purchasing Robux. These descriptions are from Jit's personal knowledge and do not seek to prove the truth of a writing, recording, or photograph. Thus, the statements do not violate the Best Evidence Rule.

Objection Number 2 to paragraphs 6, 8, and 9 also incorrectly invokes the Best Evidence Rule. Jit states that, after Plaintiff's counsel provided Roblox's counsel with a username associated with Plaintiff's Roblox account, she determined that the account was created on September 28, 2022. ECF No. 50-2 ¶ 6 ("According to Roblox's records, that username is associated with the

creation of a Roblox account belonging to Plaintiff, created on September 28, 2022 (the "Account")). Jit then states that "Roblox's records indicate" the Account remains open, was most recently used on February 24, 2026, and the user entered their date of birth as January 4, 2009. *Id.* ¶¶ 8–9. Jit does not attach the records showing this information. However, Roblox does not use these statements to prove what its records show. Rather, it uses the statements to show the username provided by Plaintiff's counsel is associated with an account opened on September 28, 2022 by someone who entered their date of birth as January 4, 2009, and that the account remains open. This does not violate the Best Evidence Rule. Plaintiff's best evidence objections are overruled.

**D. Relevance**

Plaintiff objects to the relevance of Jit's description of the Buy Robux pages and the screenshot of a gift card purchased from Walmart in 2022, arguing that the screenshot shows a generic gift card, not the actual gift card S.S.M. redeemed on November 26, 2022. Pl.'s Obj. Nos. 9, 10, 11, 15, ECF No. 76 at 26–30, 38–39.

Only relevant evidence is admissible. Fed. R. Evid. 402. The test for relevance is a low bar. *Forrest v. Parry*, 930 F.3d 93, 114 (3d Cir. 2019). To be relevant, evidence need only have "*any tendency* to make a fact [of consequence] more or less probable." *Id.*; Fed. R. Evid. 401. Jit described the disclosures presented to Robux purchasers in each purchase method (internet browser, mobile device, etc.). The descriptions of the ways a user would purchase Robux and what they would see during that process, including a disclosure that they were agreeing to an arbitration agreement, is clearly relevant, whether or not Jit identifies the exact method S.S.M. used to make the purchases. Each method involved a substantially similar disclosure, of which Jit provides a description and screenshot.

Plaintiff additionally argues that the description of the Robux purchase process "[f]rom January 2023 to present" is irrelevant, in particular the reference to the disclosure that "currently"

appears, because the last Robux purchase was four months before Jit executed the declaration. However, Jit attests that the process and screen flows were the same throughout that time. *See* ECF No. 50-2 ¶ 19 (describing process from January 2023 to the present and explaining what disclosures were presented to users during that time). Finally, the screenshot is an example of how the disclosure appeared on gift cards sold from Walmart at the relevant time. The argument that it is not the exact gift card S.S.M. redeemed goes to the weight of the evidence, not its admissibility.

### E. Hearsay

Hearsay statements may be considered on a summary judgment motion "if they are capable of admission at trial." *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n.2 (3d Cir. 2000). Not every document or out-of-court statement is hearsay. Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted." Fed. R. Evid. 801. "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801 advisory committee's note. Additionally, where a declarant reviews business records to gain personal knowledge and makes statements based on that knowledge, the statements are not hearsay. *Klosterman*, 752 F. Supp. 3d at 477.

Even if the statements or exhibits are hearsay, they may be admissible if the declarant lays the foundation to invoke an exception. Fed. R. Evid. 803(6) allows for the admission of business records where the proponent demonstrates all of the following:

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;

> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Plaintiff argues that Jit's reliance on Roblox's business records is hearsay. Specifically, Plaintiff argues that the assertions that the account "remains open" and was "most recently used on" a certain date, and that a date of birth was entered "when the Account was created" are necessarily derived from out-of-court records and are offered for the truth of the matter asserted. *See* Pl.'s Obj. No. 2, ECF No. 76; ECF No. 50-2 ¶¶ 6, 8, 9. Additionally, Plaintiff contends the statement describing the requirements for using the Roblox Platform—creating an account and agreeing to the RTOU and later updates—are hearsay. Pl.'s Obj. Nos. 3–4, ECF No. 76 at 11–13; ECF No. 50-2 ¶ 10. They are not. The fact that Jit reviewed Roblox's records to gain the knowledge necessary to make that statement does not convert her statements into hearsay.

Plaintiff also challenges the contents of the update notices as hearsay. The contents of these notices, including the requirement that users click "I Agree," form the agreements at issue. They have independent legal significance and are not hearsay. *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994) ("A contract is a verbal act. It has legal reality independent of the truth of any statement contained in it. . . . The admission of a contract to prove the operative fact of that contract's existence thus cannot be the subject of a valid hearsay objection. To introduce a contract, a party need only authenticate it.").

Plaintiff additionally objects to the records of the Robux purchases and gift card redemptions for the Roblox Account. Jit attested that the records she relied on and attached are those maintained in the ordinary course of business. ECF No. 50-2 ¶ 1. She is familiar with the

systems and records that relate to Roblox account holders' records. *Id.* This is sufficient to satisfy the Court that Roblox would be able to present the evidence in an admissible form—*i.e.*, to satisfy the business records exemption.

Finally, Plaintiff objects to Jit's statement that Roblox does not have a record of S.S.M. or Mercado opting out of the arbitration agreement within 30 days of acceptance. Pl.'s Obj. No. 8; ECF No. 50-2 ¶ 16. Fed. R. Evid. 803(7) permits evidence that a matter is not included in a business record if:

> (A) the evidence is admitted to prove that the matter did not occur or exist;
>
> (B) a record was regularly kept for a matter of that kind; and
>
> (C) the opponent does not show that the possible source of the information or other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(7). Jit did not establish that Roblox regularly keeps records of opt-out notices from Roblox account holders. Objection Number 8 to paragraph 16 of the Jit Declaration is, therefore, sustained. However, this is immaterial because Plaintiff does not argue S.S.M. opted out of the arbitration agreement.

### F. Lay Opinion

A lay witness may testify in the form of an opinion if it is (a) rationally based on his perception, (b) helpful to determine a fact in issue, and "(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Plaintiff argues that Jit improperly opines that Robux purchases required agreement to the RTOU and that the screenshots provided are "representative" of the screens shown at any given relevant time. Pl.'s Obj. No. 12, 13, 16. The Court disagrees. These descriptions and comparisons are rationally based on Jit's perception after working for Roblox for three years and reviewing Roblox's records. They are helpful to the Court to determine whether the parties manifested intent to be bound by the

RTOU, and they require no specialized knowledge. Plaintiff's objections under Fed. R. Evid. 701 are overruled.

## III. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "expresse[s] a strong federal policy in favor of resolving disputes through arbitration." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). Arbitration is a creature of contract, so "[a] court can compel a party to arbitrate only if the party agreed to arbitration." *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 142 (3d Cir. 2022). The Court, therefore, "consider[s] two 'gateway' questions: (1) whether the parties have a valid arbitration agreement at all (i.e., its enforceability), and (2) whether a concededly binding arbitration clause applies to a certain type of controversy (i.e., its scope)." *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (citation modified).

Where, as here, the arbitration agreement is not apparent on the face of the complaint, the summary judgment standard applies. *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 318 n.7, 319–20 (3d Cir. 2024). The Court must view the evidence in the light most favorable to the party opposing arbitration and determine whether there is a genuine factual dispute as to the existence, enforceability, or scope of the arbitration agreement. *Id.*; *see also* Fed. R. Civ. P. 56. Once the moving party produces sufficient evidence to show the absence of a genuine dispute as to formation, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In analyzing whether a valid arbitration agreement was formed, courts look to ordinary state-law principles governing contract formation. *Century Indem. Co.*, 584 F.3d at 524. Under Pennsylvania law, which both parties apply, the Court considers: "(1) whether both parties

manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998). Pennsylvania courts generally enforce electronic agreements, *Pricharda v. Checkr, Inc.*, No. 22-cv-3180, 2022 WL 16749033, at *3 (E.D. Pa. Nov. 7, 2022) (collecting cases); *see also Wiggins v. Lab'y Corp. of Am. Holdings*, No. 24-0648, 2024 WL 4476646, at *7 (E.D. Pa. Oct. 11, 2024), so long as the consumer was on inquiry or constructive notice of the agreement, *McCormack v. Dentsply Sirona, Inc.*, No. 26-CV-2154, 2026 WL 1830935, at *4, n.2 (E.D. Pa. June 24, 2026).

### A. S.S.M. Created the Roblox Account and Continued Playing after Receiving Notice of Updates.

It is undisputed that S.S.M. has played Roblox many times and that S.S.M. could not have done so without a Roblox account. ECF No. 1 ¶¶ 9, 13, 97. Based on information provided to Roblox's counsel by Plaintiff's counsel, Roblox identified the Roblox Account, which was created on September 28, 2022. *See* ECF Nos. 71-3, 50-2 ¶ 6. When creating a Roblox account, users must agree to the RTOU. ECF No. 50-2 ¶ 10. When Roblox updates the terms, users must again agree to the RTOU when pop-up notices appear on their screen. *Id.* ¶ 14. Users may not continue to play Roblox unless they select "I Agree" at the bottom of the pop-up notice. *Id.* The pop-up notice directs minors to show the update to their parent or guardian. *Id.* It also contains a hyperlink to the RTOU. *Id.* A pop-up notice was sent to S.S.M.'s Roblox Account in August 2023, February 2024, June 2024, November 2024, and June 2025. *Id.* S.S.M. continued to use the Roblox account following each pop-up notice. *Id.* ¶ 15. In addition to the pop-up notices, Roblox informs account holders of updates to the RTOU through a notification on their personal "Messages" page thirty days before the changes take effect. *Id.* ¶ 12. That message informed users of the updates, linked to the RTOU, and directed minors to show their guardian. *Id.* ¶ 13. It also explained that if they do

not agree to the updated terms, they can close their Roblox accounts. *Id.* S.S.M. continued to use the Roblox Account following receipt of these Update Messages.

S.S.M. does not deny creating the Roblox Account, which required accepting the RTOU. Nor does S.S.M. deny clicking "I Accept" after receiving pop-up notices or that S.S.M. received the Update Messages. The account creation, acceptance of updates by clicking "I Accept" on pop-up notices, and continued use of the Roblox Account following receipt of the Update Messages all manifested S.S.M.'s assent to be bound by the RTOU and the arbitration clause contained therein. *See Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d Cir. 2008).

Nonetheless, S.S.M. states they have not seen the RTOU, nor do they remember seeing any message from Roblox about arbitration. ECF No. 71-1 ¶¶ 7–9. A lack of memory of the agreement does not establish a genuine dispute that it was provided and that S.S.M. manifested assent. *See Tomlin v. Roblox Corp.*, No. 25-4301, 2026 WL 1412606, at *7 (E.D. Pa. May 20, 2026); *Juric v. Dick's Sporting Goods, Inc.*, No. 20-CV-00651, 2020 WL 4450328, at *9 (W.D. Pa. Aug. 3, 2020) (explaining that plaintiffs' assertion that they "do not remember executing the Arbitration Agreements[] does not create a factual dispute"). Nor does S.S.M.'s failure to read the agreement or show it to their guardian negate that by creating an account, later accepting the RTOU updates, and continuing to use the account following notice of the updates, Roblox was justified in inferring S.S.M.'s assent. *See Morales*, 541 F.3d at 222–23 (vacating district court's denial of motion to compel arbitration despite plaintiff's ignorance of arbitration agreement because "[i]n the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable" and it is the signatory's responsibility to read the agreement or have it read and explained to him); *see also Gomez v. Rent-A-Center, Inc.*, No. 18-cv-1528, 2018 WL 3377172, at *4–5 (D.N.J. July 10,

2018) (rejecting plaintiff's argument that she did not understand she was waiving her right to a jury trial by signing an arbitration agreement because the waiver was clear, and "[i]t was her obligation to ensure that she understood the implications of the agreement before signing it").

S.S.M. is also "aware of other people using the same Roblox account [S.S.M.] use[s] to play Roblox" and rarely has to enter their username or password to play. *Id.* ¶¶ 4–6. Nonetheless, S.S.M. does not identify any of those individuals or the frequency with which they accessed the Roblox Account. Even assuming one of those other unnamed individuals was using the Roblox Account at the time of the pop-up notice, this does not raise a genuine dispute regarding who created the Roblox account and whether S.S.M. continued to play after receiving notice of the RTOU's updates through the Update Message.

**B. S.S.M. Purchased Robux and Redeemed Robux Gift Cards.**

While logged into the Roblox Account, S.S.M. made multiple Robux purchases between 2023 and 2025 and redeemed Robux gift cards on multiple occasions in 2022 and 2023. ECF No. 50-2 ¶¶ 24, 32. When completing each transaction, whether in an internet browser or mobile device, a notice was shown on the screen that submitting the payment information or redeeming the gift card code meant the user was agreeing to the RTOU, including the arbitration clause. *Id.* ¶¶ 21, 22, 23, 25, 29. The RTOU was hyperlinked on each notice. *Id.* A similar notice was shown on the back of at least one gift card. *Id.* ¶ 33. S.S.M. does not deny purchasing Robux or redeeming the Robux gift cards. *See* ECF No. 68-2 ¶¶ 5–9. By following through with those transactions, S.S.M. manifested an intent to be bound by the RTOU. *See Morales*, 541 F.3d at 221–22 ("Acceptance is measured not by the parties' subjective intent, but rather by their outward expressions of assent. . . . According to the objective theory of contract formation, what is essential is not assent, but rather what the person to whom a manifestation is made is justified as regarding as assent." (citations omitted)).

**C. Mercado Did Not Agree to the RTOU.**

Mercado expressly denies ever playing Roblox, creating a Roblox account, purchasing Robux, redeeming a Robux gift card, or otherwise having any opportunity to agree to the RTOU. ECF No. 68-1 ¶¶ 5–12. Mercado, therefore, never entered an agreement with Roblox on her own behalf or on S.S.M.'s behalf. Thus, the Court will not consider whether S.S.M. is bound by an agreement between Mercado and Roblox.

**D. The Account Creation and Robux Transaction Screens Provide Adequate Notice that Users Are Agreeing to Arbitrate their Claims.**

Plaintiff argues that, even if S.S.M. unknowingly agreed to the RTOU through account creation or use, they cannot be bound because Roblox did not prove adequate notice of the agreement. ECF No. 68 at 13. The Court disagrees.

There are different kinds of electronic agreements, the most common of which are clickwrap and browsewrap agreements. *See McCormack*, 2026 WL 1830935, at *4, n.2. "'Clickwrap' agreements arise where a website presents the consumer with terms and conditions, often via hyperlink, and the consumer must click a box stating 'I agree' before continuing onto the site." *Id.* (citing *Duffy v. Tatum*, 354 A.3d 14, 23–24 (Pa. Super. Ct. 2026). The affirmative act of clicking "I agree" generally renders clickwrap agreements enforceable, even if the consumer never clicked on the hyperlink or read the agreement. *Id.* This is true so long as the consumer received inquiry notice of the agreement. *Id.* By contrast, "browsewrap agreements do not require users to expressly manifest assent." *James v. Global TelLink Corp.*, 852 F.3d 262, 267 (3d Cir. 2017) (finding no assent where user made transaction over the phone and terms of service were on website). Instead, the terms and conditions are usually hyperlinked on the webpage, and users are said to agree merely by continuing to use it. *Id.* Courts are more hesitant to enforce browsewrap agreements, requiring the terms or the hyperlink to the terms be reasonably conspicuous to put the

user on constructive or inquiry notice of the agreement. *Id.*; *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

With either kind of online agreement, "a true and actual meeting of the minds is not necessary to form a contract." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009) (cleaned up). Courts look "not to inward, subjective intent but, rather, to the 'intent a reasonable person would apprehend in considering the parties' behavior." *Id.* Accordingly, "an internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence." *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 332 (W.D. Pa. 2020) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 232 (2d Cir. 2016)); *see also Dicent v. Kaplan Univ.*, 758 F. App'x 311, 314 (3d Cir. 2019) (not precedential) (finding plaintiff's failure to read enrollment packet containing arbitration agreement "will not save her from her obligation to arbitrate"); *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983) ("In the absence of proof of fraud, failure to read the contract is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof." (cleaned up)). The Court will, therefore, examine whether Roblox presented the RTOU in a way that would be reasonably conspicuous to the reasonably prudent user. *McCormack*, 2026 WL 1830935, at *5; *Berman*, 30 F.4th at 856.

As an initial matter, the Court is without information as to whether the agreement at the time S.S.M. first created the Roblox Account was clickwrap or browsewrap, nor did Roblox provide screenshots of the process to determine whether the notice at that time was reasonably conspicuous. *See* ECF No. 50-2 ¶ 10. Roblox has provided screenshots of specific Update Messages sent in relation to the August 1, 2023 update and of the processes for purchasing Robux

and redeeming gift cards. *See id.* ¶¶ 11–15, 25, 29–30, 33. The Court will thus focus on those instances of acceptance.

"When analyzing whether notice is reasonably conspicuous, the court views the website from the perspective of the reasonably prudent internet user, i.e., 'a person who is neither an expert nor a novice with technology,' which 'permits certain basic, objective assumptions regarding the user's familiarity with commercial websites, hyperlinks, and online contracts.'" *Checchia v. SoLo Funds, Inc.*, 771 F. Supp. 3d 594, 607–08 (E.D. Pa. 2025); *see also Am. Eagle Outfitters*, 584 F.3d at 582 ("In assessing intent, the object of the inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior."). Thus, courts consider "both 'the context of the transaction' and visual aspects of the notice to determine whether it was reasonably conspicuous." *Checchia*, 771 F. Supp. 3d at 608 (citing Ninth Circuit case law after explaining that Pennsylvania and California law on contract formation are interchangeable).

The notices appear as follows:







ECF No. 50-2 ¶¶ 13 (left: in message box thirty days before August 1, 2023 update took effect), 14 (right: pop-up notice for June 2025 update).




*Id.* ¶ 29 (Robux gift card redemption screen for redemptions between September 29, 2021, and April 4, 2023).

The pop-up notice required users to click a button that said "I Agree," making it a clickwrap agreement, which is a kind of agreement that courts routinely enforce. *See Pricharda*, 2022 WL 16749033, at *3. That notice and each of the others shown above informed users they were agreeing to the RTOU and directed minors to show their parent or guardian. The words "Terms of Use" were clear, prominently positioned, and in a different color that would draw the eye of a reasonable user. Users could click on the hyperlink and review the terms. For Robux purchases and gift card redemptions, users did not even have to click on the hyperlink to know they were entering an arbitration agreement.

Plaintiff, in essence, argues that there should be a heightened notice standard for online agreements associated with products marketed to children. *See* ECF No. 68 at 14. Even if that were true, it is hard to imagine what more Roblox could have done to put minors on notice that they should get an adult to review the message or updates. The minor's choice not to read or follow that instruction does not make the notice inadequate.

Plaintiff cites to *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243 (N.D. Cal. 2022), which denied a motion to dismiss based on the RTOU's informal dispute resolution provision. The court found that the account creation and Robux purchases processes did not provide adequate inquiry notice to a 10-year-old child. *Id.* at 1256. On the sign-up page, the child had to enter her information (username, birthday, etc.), then click a "bright, large 'Sign Up' button." *Id.* Above that button was "a much less conspicuous statement indicating that clicking that button has the effect of . . . agreeing to hyperlinked terms of use." *Id.* The court found that "[a] child—even a reasonably prudent one—would not be on inquiry notice that she was assenting to an agreement from this set of facts." *Id.* This case is unpersuasive, in large part because the Court does not rely on Roblox's sign-up page at all.

Notably, other California courts have found that Roblox's pop-up notices sufficiently put minors on notice of an agreement, especially because they require them to click a button accepting the terms before continuing to use the platform. *G.G. v. Roblox Corp.*, No. 25-cv-10137, 2026 WL 1615999, at *1 (N.D. Cal. June 5, 2026). This Court agrees and finds that the pop-up notice, Update Message, and Robux gift card redemption pages all provided adequate inquiry notice, even considering S.S.M.'s age.

**E. Delegation and Plaintiff's Defenses**

Plaintiff argues the Court should not compel arbitration because S.S.M. is not competent to contract, S.S.M. disaffirmed the RTOU, including the arbitration and delegation clauses, and the RTOU is unconscionable. Roblox argues in reply that those questions are not for the Court to decide because the RTOU delegates them to the arbitrator. Courts must enforce arbitration agreements according to their terms, including agreements to delegate questions of arbitrability to the arbitrator. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Where there is an agreement to delegate, the Court's power to resolve a dispute is limited to two circumstances: (1)

when the challenge goes to the formation of the contract, or (2) when the challenge is specifically directed to the delegation clause.

"[C]hallenges to the *formation* of a contract are 'generally for courts to decide,'" *SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 271 (3d Cir. 2013), because a court must compel arbitration only "upon being satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4; *MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 396, 397–98 (3d Cir. 2020) (explaining the court must "decide questions about the formation or existence of an arbitration agreement, namely the element of mutual assent"). However, "if a valid agreement exists, and if the agreement [clearly and unmistakably] delegates the arbitrability issue to an arbitrator, a court may not decide" whether a certain dispute is arbitrable. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *see also Zirpoli*, 48 F.4th at 138. Where the agreement contains such a clear and unmistakable delegation clause, courts must examine the plaintiff's challenge and determine whether it is specifically directed at that clause, as opposed to the arbitration agreement or contract as a whole. *Zirpoli*, 48 F.4th at 144; *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 (3d Cir. 2020). If the challenge is not specifically directed at the delegation clause, the court must treat the delegation clause as enforceable and refer questions of validity or enforceability to the arbitrator. *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 227 (3d Cir. 2018). A party may challenge the delegation provision on the same legal grounds as may be raised with respect to the entire agreement. *Id.* (finding a section discussing challenge to delegation provision, identifying same defect that applied to arbitration provision as a whole, sufficient to invoke court's power to intervene); *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024) ("The severability . . . rule does not require that a party challenge *only* the arbitration or delegation provision. Rather, where a challenge applies 'equally' to the

whole contract and to an arbitration or delegation provision, a court must address that challenge."). However, it is not enough to merely "recycle[] the same arguments that pertain to the enforceability of the agreement as a whole." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 885–86 (6th Cir. 2021) (referring infancy defense to arbitrator and rejecting party's "mere statement that it is challenging the delegation provision" as insufficient because the "defense affects the validity or enforceability of 'the whole contract,' as well as the agreement to arbitrate and its delegation provision, which are 'part of that contract'"). The Ninth Circuit has characterized the question as follows: only courts can decide "the threshold issue of the *existence* of an agreement to arbitrate," but arbitrators may decide challenges seeking to "*avoid* or *rescind*" a contract containing an arbitration provision when the parties so agree. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991). This rationale extends to "challenges seeking to *avoid* or *rescind* a contract," including on the grounds that "one party was an infant." *Id.* at 1140 (citation omitted).

If the plaintiff does specifically challenge the delegation clause, the court must determine whether that clause is enforceable. *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 (3d Cir. 2020). Only if the delegation clause is unenforceable may the Court consider the questions that would have been delegated. *Id.* This is true even if the Court thinks the argument for arbitration is "wholly groundless." *Henry Schein, Inc.*, 586 U.S. at 70.

Applying these principles, the Court must first decide whether Plaintiff's disaffirmance, unconscionability, or capacity defenses either: (1) go to the making of the agreement or (2) are specific attacks on the delegation clause. *Id.*; *Zirpoli*, 48 F.4th at 144; *MZM Constr.*, 974 F.3d at 392; *see also Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 100–01 (3d Cir. 2000) (holding challenge to contract on grounds that signatory lacked authority to sign is challenge to formation,

not validity, and must be decided by court). If the answer is no to both questions, the Court lacks the power to resolve the issue and must submit it to the arbitrator.

**1. Unconscionability**

Plaintiff argues that the delegation provision, along with the entire RTOU, is unconscionable. "In the Third Circuit, unconscionability is considered a 'contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract.'" *Steinberg v. Capgemini Am., Inc.*, No. 22-489, 2022 WL 3371323, at *3 (E.D. Pa. Aug. 16, 2022) (quoting *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)). This is generally a question of the contract's enforceability, not formation. *Id.* (finding unconscionability challenge was for arbitrator to decide where party opposing arbitration did not argue the delegation clause itself was unenforceable or unconscionable); *see also Stanford v. Azzur Grp., LLC*, No. 23-cv-03017, 2024 WL 921027, at *4 (E.D. Pa. Mar. 4, 2024) (same). The RTOU delegates such questions to the arbitrator, so the Court may only consider Plaintiff's unconscionability challenge if the Court finds the delegation clause is unconscionable. *See Zirpoli*, 48 F.4th at 138; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 73 (2010) (finding court could not consider unconscionability challenge where arbitration agreement contained delegation clause and party opposing arbitration raised no substantive unconscionability challenges specific to the delegation provision).[1]

The party challenging the contract bears the burden of proving unconscionability. *Salley v. Option One Mortg. Corp.*, 925 A.2d 115 (Pa. 2007). Under Pennsylvania law, "[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of

---

[1] The Third Circuit has recognized that generally, "an unconscionability challenge to the provisions of an arbitration agreement is a question of arbitrability that is presumptively for the court, not the arbitrator, to decide." *Puleo v. Chase Bank, N.A.*, 605 F.3d 172, 180 (3d Cir. 2010). However, this does not apply where there is a valid delegation clause.

the parties together with contract terms which are unreasonably favorable to the other party." *Witmer v. Exxon Corp.*, 434 A.2d 1222, 1228 (Pa. 1981). In other words, the party asserting the defense of unconscionability must show both procedural unconscionability (absence of meaningful choice) and substantive unconscionability (unreasonably favorable terms). *Garcia v. HCR ManorCare, LLC*, No. 1743 MDA 2014, 2016 WL 127514, at *7, *8 n.10 (Pa. Super. Ct. Jan. 12, 2016) (explaining party's age, education level, and business acumen were immaterial because they were beyond drafting party's control, and finding such factors did not render agreement procedurally unconscionable); *Tillman v. Com. Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008) (requiring showing of both procedural and substantive unconscionability under North Carolina law). Disparity in bargaining power alone does not establish unconscionability. *Witmer*, 434 A.2d at 1228.

Plaintiff has not met her burden of establishing the delegation clause is unconscionable. The only grounds she raises for substantive unconscionability are that the arbitration clause imposes a shorter limitations period on claims than would otherwise be available and that the delegation clause calls for use of the FedArb rules without the opportunity to modify or negotiate that choice. However, Plaintiff makes no effort to explain how either of those selections would affect Plaintiff's ability to raise her defenses to the enforceability or validity of the arbitration clause. For that reason, the Court cannot find that the delegation clause is unenforceable due to unconscionability. *See Clerk v. First Bank of Del.*, 735 F. Supp. 2d 170, 184–85 (E.D. Pa. 2010) (finding plaintiff failed to establish substantive unconscionability where she did not "point to any particular . . . limitation which would impede her ability to assert legal claims"). Whether the arbitration clause or the RTOU as a whole are unconscionable would be questions for the arbitrator to decide if S.S.M. had not disaffirmed.

**2. Capacity**

Whether the Court has the power to determine Plaintiff's capacity challenge is unsettled. Plaintiff argues that whether S.S.M. had the capacity to assent to the RTOU goes to the making of the agreement, meaning it must be decided by the Court. Roblox responds that questions of capacity go to enforceability and must be submitted to the arbitrator.

It is well settled in Pennsylvania that contract formation requires "mutual assent to the terms of a contract *by the parties with the capacity to contract*." *Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 136 (Pa. 1999) (emphasis added). Minors generally do not have the capacity to contract. *Santiago v. Philly Trampoline Park, LLC*, 343 A.3d 995, 1010 (Pa. 2025). Nonetheless, the law still allows them to form a contract. *Aetna Cas. & Sur. Co. v. Duncan*, 972 F.2d 523, 526 (3d Cir. 1992). A contract with a minor is not a nullity merely because of their minority; it is only nullified upon disaffirmance. *Id.* Disaffirmance is a defense that goes to the validity or enforceability of a contract, not to its formation.

Capacity challenges may be different, at least when they are based on something other than minority. *See Spahr v. Seeco*, 330 F.3d 1266, 1270, 1273 (10th Cir. 2003) (explaining that a mental capacity challenge necessarily goes to the "making" of the agreement, so, in an arbitration agreement with no delegation provision, that challenge must be decided by the court); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) (citing *Spahr* but noting that the Court was not speaking to the question of whether it is for the courts to decide whether the signor lacked mental capacity to dissent); *SBRMCOA*, 707 F.3d at 274 (acknowledging *Spahr* and noting that "*Buckeye Check Cashing* left open the question whether mental capacity challenges to a contract are arbitrable"). The Court is persuaded by Plaintiff's argument that where a party argues they lacked the capacity to assent to a contract, this raises a question of formation. That is a question for the Court to decide. *See Dolgencorp LLC v. Sica*, No. 22-4269, 2024 WL 2796547, at

*3 n.6 (D.N.J. May 31, 2024) ("Where, as here, a defense to an application to compel arbitration rests on the claim that one party did not have the mental capacity to enter into the agreement, courts typically hold that this is an issue under Section 4 of the FAA for a court to decide.").

Nonetheless, while the Court would be inclined to consider Plaintiff's capacity argument, Plaintiff has not provided legal analysis of what they must prove to establish incapacity. The single Pennsylvania case Plaintiff cites that discusses mental capacity is about an adult, not a child. That case is not helpful because, unlike children, adults are presumed to be competent to contract. Parties seeking to prove an adult's mental incapacity "must present evidence of mental incompetency [at the time of contracting] which is clear, precise and convincing," so the court may determine whether the signatory had "sufficient intelligence . . . to comprehend the nature and character of the transaction." *Cardinal v. Kindred Healthcare, Inc.*, 155 A.3d 46, 50 (Pa. Super. Ct. 2017).

The Court does not find this standard applicable here because the law in Pennsylvania does not presume minors have capacity to contract: quite the opposite. That is why they are permitted to avoid enforcement by disaffirming contracts they enter. Plaintiff has pointed to no case law applying the capacity defense to a contract with a minor to negate formation. Even if the adult standard applied to a capacity defense based on minority, Plaintiff submitted no evidence showing S.S.M. so lacked the intelligence to comprehend that they were entering an agreement (or that they should involve their guardian) when clicking "I Accept" each time they were confronted with the notices. The declaration of Dr. Asher provides general opinions relating to the ability of children to comprehend complex agreements like the RTOU, but Dr. Asher does not specifically opine on S.S.M.'s abilities. Nor did Dr. Asher meet with S.S.M. or anyone who was around S.S.M. at the

time of contracting or review S.S.M.'s documentation of their specific conditions which would contribute to such incapacity.

S.S.M. was presented with the RTOU as recently as June 2025, when S.S.M. was 16 years old. Plaintiff has not established that S.S.M. was incapable of understanding or following Roblox's instruction to involve their guardian. *See Morales*, 541 F.3d at 222–23. For that reason, the Court cannot find Plaintiff established that S.S.M.'s minority and mental incapacity made it so that an agreement was never formed.

**3. Disaffirmance**

Finally, Plaintiff argues S.S.M. has disaffirmed the delegation provision of the RTOU's arbitration agreement. S.S.M. executed a declaration on June 3, 2026, asserting they disaffirm the RTOU "and any included arbitration agreements or delegation agreements." ECF No. 71-1 ¶ 22. Whether this was an effective disaffirmance does not go to the question of formation because generally a contract with a minor may be formed and enforceable unless and until the minor disaffirms it. *Tomlin*, 2026 WL 1412606, at *9 (citing *Duncan*, 972 F.2d at 526). The Court, therefore, must determine whether Plaintiff's disaffirmance of the delegation clause itself renders the delegation clause unenforceable.

Plaintiff argues S.S.M. may separately disaffirm the delegation clause because it is severable from the rest of the RTOU. In other words, Plaintiff seeks to directly challenge the delegation clause by separating S.S.M.'s disaffirmance of the delegation clause from the disaffirmance of the arbitration provision and the RTOU as a whole. The Court finds this disaffirmance of the delegation clause effective. A minor cannot only disaffirm parts of the contract they find unfavorable while continuing to reap the benefits of the rest. *See* Restatement (Second) of Contracts § 7; 3 Williston on Contracts § 7:14 (4th ed.); *Duncan*, 972 F.2d at 526. However,

they may raise a challenge to the delegation clause on the same grounds that apply equally to the contract as a whole. *MacDonald*, 883 F.3d at 227. That is what S.S.M. has done.

Because S.S.M. disaffirmed the delegation clause, it is unenforceable, and the Court may consider whether S.S.M. has disaffirmed the RTOU as a whole, including its arbitration provision. Once again, they have. S.S.M. submitted a declaration expressly disaffirming any agreement with Roblox, including any arbitration agreement and delegation clause therein. ECF No. 68-2 ¶ 22. Roblox argues S.S.M.'s disaffirmance was ineffective because they continue to use the Roblox Account. However, Roblox offers no evidence that S.S.M. used the Roblox Account after executing the June 3 Declaration. *Contra Tomlin*, 2026 WL 1412606, at *11–12. As a minor, S.S.M. was entitled to disaffirm the RTOU and avoid its enforcement. S.S.M. has done so, and Roblox has not shown the June 2026 disaffirmance was incomplete or otherwise ineffective. For this reason, Roblox's motion is denied. *See R.A. v. Epic Games, Inc.*, No. 19-1488, 2019 WL 6792801, at *7 (C.D. Cal. July 30, 2019) (finding plaintiff's declaration was valid disaffirmation where there was no evidence that he continued playing Fortnite after submitting the declaration).

## IV. Conclusion

S.S.M. manifested their assent to the RTOU on multiple occasions: when Roblox sent a notice 30-days prior to updates, when pop-up notifications of updates required them to click "I Accept," and when purchasing Robux and redeeming Robux gift cards. The RTOU's delegation clause clearly delegates questions of arbitrability to the arbitrator. However, S.S.M. explicitly and specifically disaffirmed the delegation clause, making it unenforceable. This disaffirmance allows the Court to consider whether S.S.M. is bound by the RTOU's arbitration clause. Because S.S.M. disaffirmed the RTOU and Roblox presented no evidence that would invalidate that disaffirmation, S.S.M. cannot be bound by the contract. Roblox's motion to compel arbitration must be denied.