**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANY MERCADO, as Legal Guardian of, S.S.M., a minor,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| v. | : | |
| | : | **NO. 25-5925** |
| **ROBLOX CORPORATION, EPIC GAMES, INC., MICROSOFT CORPORATION, and MOJANG AB,** | : | |
| Defendants. | : | |

**Perez, J.** **September 25, 2026**

**MEMORANDUM**

This case arises from minor Plaintiff S.S.M.'s use of and resulting addiction to video games created by Defendants Epic Games, Inc. ("Epic"), Roblox Corporation ("Roblox"), and Mojang AB ("Mojang"), all of which may be played on Defendant Microsoft Corporation's ("Microsoft") Xbox gaming system. Players cannot play these games without first creating accounts and accepting Defendants' user agreements. Those terms all contain arbitration provisions. Before the Court is Microsoft and Mojang's motion to compel arbitration based on S.S.M.'s acceptance of the Microsoft Services Agreement (MSA). However, even if S.S.M. agreed to the MSA by creating and using Microsoft and Xbox accounts, S.S.M. disaffirmed any agreement they personally entered. Separately, Microsoft has not established that Mercado agreed to the MSA on S.S.M.'s behalf. Under Pennsylvania law, minors may disaffirm contracts and avoid their enforcement. Although Microsoft argues S.S.M. continued to use Xbox's services after filing the Complaint, it does not present any evidence that S.S.M. continued to use Xbox's services after filing the declaration. For that reason, the motion must be denied.

## I. Background[1]

Mojang developed, markets, and sells the Minecraft video game series and platform. ECF No. 1 ¶ 25. Mojang is a wholly owned subsidiary of Microsoft, a video game developer and publisher and the creator of the Xbox Platform. ECF No. 1 ¶¶ 21–22, 26. Xbox is an interactive gaming system through which users can play video games at home. Abbott Decl., ECF No. 54-3 ¶ 2. Plaintiff S.S.M. began playing video games, including Minecraft, when they were six years old. ECF No. 1 ¶¶ 13, 282. Now a teenager, S.S.M. alleges they are addicted to video games because of their use of Defendants' games, including Roblox, Minecraft, and Fortnite. *Id.* ¶ 280. This addiction has caused S.S.M. to spend most of their time outside of school playing video games and has caused a decline in S.S.M.'s academic performance and diminishing social interactions. *Id.* ¶¶ 290–92. S.S.M. suffers from severe withdrawal symptoms if anyone attempts to remove them from video games. *Id.* ¶ 294.

On October 15, 2025, S.S.M. brought this lawsuit, raising claims of, inter alia, strict product liability, negligence, and fraud against each Defendant. On December 3, 2025, the parties entered a stipulation setting a deadline for all Defendants to file motions to compel arbitration by February 27, 2026. ECF No. 32. The Court approved the stipulation on the same day. ECF No. 34. Microsoft and Mojang timely moved to compel S.S.M. to arbitrate their claims. ECF No. 54 (Microsoft's and Mojang's Motion). Plaintiff filed an opposition and objected to the Declarations of Sozi Pedro Tulante, Juliamarie Abbott, and Michael Scari and the exhibits attached thereto. ECF No. 65. The motion and objections have been fully briefed and are ripe for review.

[1] Microsoft and Mojang both rely on the account creation process and continued use of the Xbox services following notifications of updates to the MSA as the basis for the motion to compel arbitration. The MSA governs services that include Minecraft. *See* Scari Decl. ¶ 6 & Ex. A, ECF Nos. 54-4 & 54-5. The Court refers to Microsoft and Mojang together as "Microsoft" throughout this Memorandum when discussing their arguments.

Before using an Xbox device or using any Xbox services, including to play games such as Minecraft, users must create a Microsoft account and an Xbox account. ECF No. 54-3 ¶¶ 3–4. Users may link an Xbox account to an existing Microsoft account, or create both new accounts at the same time on an Xbox console, using the Xbox app, or with an Internet browser. *See* ECF No. 54-3 ¶¶ 4, 5.a. When creating Microsoft and Xbox accounts, users must agree to the MSA. *Id.* ¶ 5.a. For a Microsoft account, users must provide an email address, password, and date of birth. Scari Decl., ECF No. 54-4 ¶ 3. They must click "Next" on the screen below a notice indicating "Choosing Next means that you agree to the [MSA] . . . ." *Id.* ¶ 4. The words "Microsoft Services Agreement" are in blue and contain a hyperlink to the full terms of the MSA. *Id.*

The MSA includes an agreement to arbitrate disputes, which is defined broadly, and provides the court exclusive authority "to decide arbitrability, as well as formation, existence, scope, validity, and enforcement." *See* 2025 MSA, Ex. A to Scari Decl., ECF No. 54-5 at 2, 24. By its terms, the MSA is subject to the Federal Arbitration Act ("FAA"). *Id.* at 24. The MSA also announces the arbitration clause on the first page, stating:

> **Summary of Arbitration Provisions**
>
> The Microsoft Services Agreement contains binding arbitration and class action waiver terms that apply to U.S. residents. You and we agree to submit disputes to a neutral arbitrator and not to sue in court in front of a judge or jury, except in small claims court. Please see Section 15 for details.
>
> . . .
>
> **IF YOU LIVE IN . . . THE UNITED STATES, PLEASE READ THE BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER IN SECTION 15. IT AFFECTS HOW DISPUTES ARE RESOLVED.**

2025 MSA, ECF No. 54-5 at 2.

Periodically, Microsoft updates the MSA. Scari Decl. ¶ 7, ECF No. 54-4. When Microsoft updates the MSA, it notifies account holders through emails and interrupt notices, which pop up

on the user's screen. *Id.* ¶¶ 7–9. The email notice provides a link to the new version of the MSA with a blue button labeled "Microsoft Services Agreement >", Ex. K to Scari Decl., ECF No. 54-15; Ex. L to Scari Decl., ECF No. 54-16, and the interrupt notice provides a link to the MSA with blue text labeled "Learn more," Ex. M to Scari Decl., ECF No. 54-17.

Plaintiff's counsel provided identifying information to Microsoft and Mojang, including S.S.M.'s name, gamertags, and email addresses associated with their accounts. Tulante Decl., ECF No. 56-1 ¶ 3. Using that information and information Microsoft obtained through background reports of publicly available information, Microsoft identified five Microsoft accounts. *Id.* ¶ 4; ECF No. 56-3 ¶ 10. Of those five accounts, two are registered in S.S.M.'s name: Microsoft Accounts 2 and 4. *Id.* ¶¶ 10.b, 10.d. Microsoft Account 2 was created on December 17, 2016, and most recently clicked on an interrupt notice on May 23, 2021, and Microsoft Account 4 was created on July 30, 2019, and most recently clicked on an interrupt notice on December 11, 2024. *Id.* Email notifications of MSA updates were sent to both associated email addresses in August 2024 and August 2025. *Id.* Microsoft Account 1 is registered with a first name similar to Mercado's but spelled differently and the last initial "S."[2] *Id.* ¶ 10.a; ECF No. 56-1 ¶ 4. Microsoft contends Mercado also goes by that first name, with the last name "Mercado." ECF No. 56-1 ¶ 4. Microsoft Account 1 was created on August 25, 2015, most recently clicked on an interrupt notice on December 10, 2024, and was sent an email notification of MSA updates in August 2024 and August

[2] According to Microsoft's counsel, background reports showed that Plaintiff Dany Mercado also sometimes spells her first name differently, consistent with one Microsoft and one Xbox account. ECF No. 56-1 ¶ 4. Those accounts use that first name, followed by the initial "S." The Court sustains Plaintiff's objection to this evidence as explained further below. However, even if it considered the Declaration, that statement would be insufficient to establish Mercado created either of those accounts. The accounts both use the differently spelled first name and an unrelated last initial. They were created at the exact same time, down to the minute. Mercado has never created an Xbox account, so the associated Xbox account was created by someone else using the same identifying information. Because they were created at the same time and the Xbox account was created using an Xbox device, both must have been created by someone else. Moreover, there is no evidence that Mercado has ever used the combination of the differently spelled first name with the last initial "S" such that it would be reasonable to conclude she may have done so in creating this account.

2025. ECF No. 56-1 ¶ 10.a. Microsoft Accounts 3 and 5 are associated with what appear to be a nickname and the name of an unidentified individual, respectively. *Id.* ¶¶ 10.b, 10.e.

Each of the identified Microsoft accounts has a corresponding Xbox account that shares the customer name, date of birth, email address, and creation date, with the exception of Microsoft Account 2 and Xbox Account 5, which were created 7 days apart, both in S.S.M.'s name. *Compare* ECF No. 56-3 ¶ 10, *with* ECF No. 56-2 ¶ 8. Xbox Accounts 3 and 5 are registered in S.S.M.'s name and were created on July 30, 2019, and December 10, 2024. ECF No. 56-2 ¶ 8. Xbox Account 3 has two active credit cards in S.S.M.'s name. *Id.* ¶ 8.c. It was most recently used to play Minecraft on December 17, 2025, and to play Roblox and Fortnite on February 22, 2026. *Id.* Xbox Account 5 was last accessed on December 31, 2024, but has not been used to play Fortnite, Minecraft, or Roblox. *Id.* ¶ 8.e. Xbox Account 2 is registered with the same nickname as Microsoft Account 3 and has a credit card in Mercado's name associated with it; it was last used to play Fortnite, Roblox, and Minecraft in July 2019. *Id.* ¶ 8.b. Xbox Account 1 is registered with the same name as Microsoft Account 1 and was created on August 25, 2015, at the same time as Microsoft Account 1. *Id.* ¶ 8.a; ECF No. 56-1 ¶ 4. This account was last accessed on December 10, 2024, when it was used to play Fortnite. ECF No. 56-2 ¶ 8.a.

Mercado has never created an Xbox account or seen an MSA, nor has she ever authorized the use of her credit card for a purchase related to Roblox, Fortnite, or Minecraft. ECF No. 69-1 ¶¶ 20–22, 25. She does not recall ever agreeing to the MSA. *Id.* ¶ 23. Mercado does not deny creating a Microsoft account. *See id.* ¶¶ 20–24. However, it is not clear which, if any, of the Microsoft accounts Microsoft identified are attributable to Mercado. *See* ECF No. 56-3 ¶ 10. S.S.M. does not deny creating the Xbox Accounts. ECF No. 69-2 ¶¶ 15–20. S.S.M. states that the Xbox saves their usernames and passwords and rarely asks for them to be entered before playing.

*Id.* ¶ 15. S.S.M. does not aver that anyone else has played on their Xbox or used their Xbox Accounts. *Id.* ¶¶ 15–20. S.S.M. has not seen the MSA and does not recall agreeing to any MSA or receiving any messages from Microsoft about arbitration. *Id.* ¶¶ 16–20. On June 3, 2026, S.S.M. executed a declaration disaffirming the MSA, including the arbitration agreement. *Id.* ¶ 22.

## II. Plaintiff's Objections to Microsoft's Evidence

The Court need not resolve Plaintiff's numerous objections to dispose of Microsoft's Motion. However, the Court will rule on the objections to the Declaration of Sozi Pedro Tulante because the information it presents relates to the question of whether Mercado created any of the identified accounts. *See* ECF No. 65-9; ECF No. 82. In Paragraph 4 of his declaration, Mr. Tulante states he "reviewed background reports of publicly available information that [his] firm obtained from third-party vendors for Plaintiff." ECF No. 56-1 ¶ 4. Those reports identified Mercado's date of birth, current and previous addresses, phone number, and an alternative spelling of Mercado's first name. *Id.* Plaintiff objects to this information under Federal Rules of Evidence 1002, 1004, 802, 803(6), and 901.

The Court will sustain Plaintiff's objection to the Tulante Declaration. It is true that evidence need not be authenticated and admissible in the form submitted at summary judgment. *Egan v. Live Nation Worldwide, Inc.*, 764 F. App'x 204, 208 (3d Cir. 2019). However, the proponent of the evidence must satisfy the Court that the evidence is capable of being reduced to admissible evidence at trial. *Pamintuan v. Nanticoke Mem. Hosp.*, 192 F.3d 378, 385 n.11, 387 n.13 (3d Cir. 1999) (affirming District Court's refusal to consider evidence that would not be admissible at trial). Microsoft has given the Court no basis to believe that the unidentified background reports that its counsel obtained from unidentified third-party vendors contained reliable information that would be capable of admission at trial in that or any form. The Court cannot know how many layers of hearsay those reports contain, from where the creator obtained

the information it used to compile the reports, or whether any of those sources or processes are reliable.

Additionally, Microsoft contends it does not offer the evidence for a hearsay purpose. It "is not offered to establish Plaintiff's actual date of birth, address, nickname, or phone number; it is offered simply to show that the same information listed in background reports is consistent with information provided in connection with one or more of the Microsoft and Xbox accounts at issue." ECF No. 82 at 4. If the Court accepts the evidence only for that purpose—to show certain identifying information about Mercado is publicly available and that it matches information related to the Microsoft and/or Xbox accounts—and not for its truth, the information lacks any probative value. If, for example, Mercado does not actually go by the differently spelled first name linked to Microsoft Account 1 and Xbox Account 1, the use of that first name in connection with an account S.S.M. used does not link Mercado to the creation of that account.

For that reason, the Court will not consider the Tulante declaration for the proposed non-hearsay purpose. Plaintiff's objections to the Tulante declaration are sustained.

**III. Motion to Compel Arbitration**

The FAA, 9 U.S.C. §§ 1 *et seq.*, "expresse[s] a strong federal policy in favor of resolving disputes through arbitration." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). However, arbitration is a creature of contract, and "[a] court can compel a party to arbitrate only if the party agreed to arbitration." *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 142 (3d Cir. 2022). The Court, therefore, "consider[s] two 'gateway' questions: (1) 'whether the parties have a valid arbitration agreement at all' (i.e., its enforceability), and (2) 'whether a concededly binding arbitration clause applies to a certain type of controversy' (i.e., its scope)." *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (citation omitted).

Where, as here, the arbitration agreement is not apparent on the face of the complaint, courts apply the summary judgment standard to determine whether, viewing the evidence in the light most favorable to the party opposing arbitration, there is a genuine factual dispute as to the existence, enforceability, or scope of the arbitration agreement. *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 318 n.7, 319–20 (3d Cir. 2024); *see also* Fed. R. Civ. P. 56. Once the moving party produces sufficient evidence to show the absence of a genuine dispute as to formation, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In analyzing whether a valid arbitration agreement was formed, courts look to ordinary state-law principles governing contract formation. *Century Indem. Co.*, 584 F.3d at 524. Under Pennsylvania law, which the parties agree applies, the Court considers: "(1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998). Pennsylvania courts generally enforce electronic agreements, *Pricharda v. Checkr, Inc.*, No. 22-cv-3180, 2022 WL 16749033, at *3 (E.D. Pa. Nov. 7, 2022) (collecting cases); *see also Wiggins v. Lab'y Corp. of Am. Holdings*, No. 24-0648, 2024 WL 4476646, at *7 (E.D. Pa. Oct. 11, 2024), so long as the consumer was on inquiry or constructive notice of the agreement, *McCormack v. Dentsply Sirona, Inc.*, No. 26-CV-2154, 2026 WL 1830935, at *4 (E.D. Pa. June 24, 2026).

**A. S.S.M. Disaffirmed the MSA.**

Even if a contract is formed, Pennsylvania law provides certain protections to minors, who generally lack the capacity to contract. *Santiago v. Philly Trampoline Park, LLC*, 291 A.3d 1213, 1224 (Pa. Super. Ct. 2023), *aff'd* 343 A.3d 995 (Pa. 2025). That does not mean, however, that a contract with a minor is invalid from the outset; rather, the contract is voidable by the minor. *Id.*;

*Aetna Cas. & Sur. Co. v. Duncan*, 972 F.2d 523, 526 (3d Cir. 1992). To avoid enforcement, the minor must disaffirm the contract. *Duncan*, 972 F.2d at 526. To disaffirm the contract, the minor need not return the contracted-for benefits they no longer possess. *Tomlin v. Roblox Corp.*, No. 25-5301, 2026 WL 1412606, at *11 (E.D. Pa. May 20, 2026) (citing Restatement (Second) of Contracts § 14). Nonetheless, disaffirmance cannot be used to escape enforcement of certain provisions of a contract while continuing to reap the benefits from the rest. *Id.*; *Duncan*, 972 F.2d at 526.

Here, the Court finds that S.S.M. has disaffirmed any agreements with Microsoft and Mojang. Thus, the Court need not resolve the complex questions of whether S.S.M. personally agreed to the MSA or whether the account creation process or later notifications of updates provided sufficient notice to consumers that they were entering an agreement.

Even accepting Microsoft's evidence, to which Plaintiff objects, the last time any of the S.S.M. accounts used Microsoft's or Xbox's services was February 22, 2026. ECF No. 56-2 ¶ 8.c. This Court previously addressed similar arguments relating to disaffirmance of the MSA in *Tomlin v. Roblox Corporation*, finding that the minor's continued use of the Xbox services was fatal to the plaintiff's disaffirmance argument based on the filing of a complaint. 2026 WL 1412606, at *11–12 ("M.B. receives new benefits from the MSA each time M.B. plays a game using the Xbox Accounts. In asserting disaffirmance as a means of avoiding the arbitration clause, M.B. seeks to benefit from the MSA while disaffirming only that portion of the agreement Plaintiff finds unfavorable. It would be inequitable to allow such a result, and it would be contrary to the purpose of disaffirmance—to protect minors with a shield, not arm them with a sword."). However, this case is different. S.S.M. submitted a declaration executed on June 3, 2026—after the filing of Microsoft's motion to compel arbitration and after the last time any of the accounts were

accessed—expressly disaffirming the MSA and its arbitration clause. ECF No. 69-2. Microsoft did not respond with any evidence that the Microsoft or Xbox accounts were used after that date. Accordingly, there is no evidence that S.S.M. continues to reap the benefits of the MSA while seeking to avoid only the portion of the agreement they find unfavorable. *Contra Tomlin*, 2026 WL 1412606, at *11–12. As a minor, S.S.M. was entitled to disaffirm the MSA and avoid its enforcement. S.S.M. has done so, and Microsoft has not shown the June 2026 disaffirmance was incomplete or otherwise ineffective. *See R.A. v. Epic Games, Inc.*, No. 19-1488, 2019 WL 6792801, at *7 (C.D. Cal. July 30, 2019) (finding plaintiff's declaration was valid disaffirmation where there was no evidence that he continued playing Fortnite after submitting the declaration).

**B. Microsoft Has Not Established Mercado Agreed to the MSA.**

The MSA provides that a parent or guardian who agrees to its terms may bind a minor who opens a Microsoft account in the future. *See* ECF No. 54-7 at 5. Even assuming that provision could possibly bind S.S.M. if Mercado had assented to the MSA, Microsoft has not established the necessary predicate—that Mercado personally agreed to the MSA. Microsoft has not linked Plaintiff Dany Mercado to the creation of a Microsoft or Xbox account or to any other event constituting her agreement to the MSA. Even if the Court were to consider the Tulante declaration, which the Court finds improper for summary judgment, Microsoft's motion would still fail to establish Mercado's agreement. Tulante's declaration avers that publicly available information shows Dany Mercado also goes by a differently spelled first name, with last name "Mercado." ECF No. 56-2 ¶ 6. Microsoft Account 1 and Xbox Account 1 use that first name and last initial "S" with a birthdate that matches Mercado's publicly available birth month and year. ECF No. 56-3 ¶ 10; ECF No. 56-2 ¶ 8. These accounts are not in Mercado's name, nor are they even in the name Microsoft's background reports linked to her. There is no evidence linking the use of the "S" initial to Mercado. Additionally, the accounts are associated with an email address with no identifying

information, and there appears to be a spelling error in the name of the credit card account holder associated with the Xbox account. *See* ECF No. 56-2 ¶ 8.a; ECF No. 56-3 ¶ 10.a. Xbox Account 1, which uses the same identifying information as Microsoft Account 1, was created on an Xbox at the same time the Microsoft account was created, down to the minute. *Id.* Mercado expressly denies creating an Xbox account or authorizing the use of her credit card in connection with S.S.M.'s relevant video game use. ECF No. 69-1. Microsoft's evidence is insufficient to establish the existence of a Microsoft or Xbox account created by, used by, or monitored by Mercado such that Mercado would have agreed to the MSA. Thus, even accepting Microsoft's evidence, it has failed to carry its burden of establishing an agreement between itself and Mercado sufficient to bind S.S.M.

## IV. Conclusion

For the foregoing reasons, Microsoft and Mojang's motion to compel arbitration is denied. An appropriate Order follows.